108 F.3d 1392
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
James E. WHITE, d/b/a R.I. Productions Appellant,
v.
PARAMOUNT PICTURES CORPORATION, Appellee.
 Nos. 96-1096, 90-130.
 United States Court of Appeals, Federal Circuit.
 Feb. 21, 1997.
 
 Before MICHEL, Circuit Judge, SMITH, Senior Circuit Judge, and CLEVENGER, Circuit Judge.
 SMITH, Senior Circuit Judge.
 
 Decision
 
 1
 Mr. White appeals the decision of the Trademark Trial and Appeal Board, granting summary judgment sustaining Paramount's opposition and denying White's application for registration of the mark THE ROMULANS on the principal register. The judgment of the Trademark Trial and Appeal Board is affirmed.
 
 Facts
 
 2
 Appellant is the principal member of, and songwriter for, a rock-and-roll band called "The Romulans." The band performs at concerts and parties and advertises in rock-and-roll magazines. Mr. White also promotes his band by sending recordings to radio stations and distributing fliers and promotional handouts. One such promotional device is The Romulans' connect-the-dots game. Mr. White created the connect-the-dots game in 1982. The game consists of three photocopied pages stapled together. The first page bears the instructions for the game, the name and address of the band, and the mark THE ROMULANS with a design mark consisting of three overlapping triangles. The second page is the actual game. The third page depicts the "solution" to the game, the Romulans' logo, a three triangle design, which is visible through the second page of the game, and the mark THE ROMULANS. Mr. White filed an application to register the mark THE ROMULANS for "parlor games namely connect the dots game sets."
 
 
 3
 Mr. White distributes the games at performances by the band, at performances by other bands, through the mail, and to friends, sometimes giving away the game, sometimes selling the game. He has sold these games for 25 cents, 50 cents, and sometimes a dollar. He does not keep business records as to how many games that he has sold, but attests that he has sold "at least a couple of hundred games" since 1982 and estimates that he now sells approximately twenty to twenty-five games per year.
 
 
 4
 Paramount Pictures Corporation ("Paramount") opposes the registration. Paramount produced the television programs "Star Trek" and "Star Trek: The Next Generation" along with five "Star Trek" movies. Paramount coined the term ROMULANS to refer to an alien race of space creatures and Romulans have been featured in the Star Trek productions from 1966 to the present.[1]
 
 Proceedings Below
 
 5
 On August 6, 1991, appellant filed an application in the United States Patent and Trademark Office, Serial Number 74/192,222, to register the mark THE ROMULANS for "parlor games namely connect the dots game sets." Paramount filed a notice of opposition on December 15, 1992.
 
 
 6
 Before the Trademark Trial and Appeal Board ("TTAB"), Paramount moved for summary judgment sustaining the opposition and denying registration of the mark. The TTAB granted Paramount's motion for summary judgment finding that the mark did not qualify for trademark registration because the game in question was not a "good" and the use of the game was not a "bona fide use in commerce." Paramount Pictures Corp. v. White, 31 USPQ2d 1768, 1773, 1775 ( T.T.A.B.1994).[2]
 
 Jurisdiction and Standard of Review
 
 7
 This court has jurisdiction over appeals from decisions of the TTAB under 15 U.S.C. § 1071. In reviewing a grant of summary judgment, this court must make an independent determination as to whether the standards for summary judgment have been met. See Intellicall Inc. v. Phonometrics Inc., 952 F.2d 1384, 1387, 21 USPQ2d 1383, 1386 (Fed.Cir.1992); Ortho Pharmaceutical Corp. v. Genetics Institute, Inc., 52 F.3d 1026, 1033, 34 USPQ2d 1444, 1448 (Fed.Cir.1995).
 
 Discussion
 
 8
 Paramount contends that sales of Mr. White's game do not meet the requirements of bona fide sales of a good in commerce needed for trademark registration. Section 45 of the Lanham Act ("Act") defines a trademark as a "word, name, symbol, or device ... used by a person ... to identify and distinguish his or her goods." 15 U.S.C. § 1127 (emphasis added). Moreover, Section 1 of the Act speaks of registration of marks "used in commerce." 15 U.S.C. 1051(a). For Mr. White's mark to qualify for registration on the principal register, therefore, the game must be considered a "good" and, further, must be "used in commerce." Because we determine that Mr. White's dissemination of the game was not a sufficient "use in commerce," we do not address whether his connect-the-dots game constitutes a "good."
 
 
 9
 Section 45 of the Act defines the term "use in commerce" to mean "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. The "ordinary course of trade" requirement is the result of the amendments to the Act made by the Trademark Law Revision Act of 1988, Pub.L. 100-667, 102 Stat. 3935 (1988)("Revision Act"). The Revision Act provided for a new concept of trademark use than that which had been employed in the past. Prior to the Revision Act's effective date of November 16, 1989, "token" use of a trademark was enough for registration purposes. Under the current law, applicants for registration can file either based on use or intent to use the mark. Therefore, the Revision Act eliminated the necessity for a token use system to reserve a mark, and instituted the requirement that the use must be in the "ordinary course of trade." 15 U.S.C. § 1127.
 
 
 10
 This court has yet to set any bright line rules concerning the quantum and nature of use necessary to constitute an "ordinary use in trade" under the Revision Act. The legislative history of the Revision Act is instructive as to the quantum of use required for registration. The House Report states:
 
 
 11
 While use made merely to reserve a right in a mark will not meet this standard, the [House Judiciary] committee recognizes that the "ordinary course of trade" varies from industry to industry. Thus, for example, it might be in the ordinary course of trade for an industry that sells expensive or seasonable products to make infrequent sales. Similarly, a pharmaceutical company that markets a drug to treat a rare disease will make correspondingly few sales in the ordinary course of its trade."
 
 
 12
 House Judiciary Committee Report on H.R. 5372, H.R. No. 100-1028, p. 15 (Oct. 3, 1988).
 
 
 13
 The Senate Report also recommends that a flexible test for use be employed, stating: "The [Senate Judiciary] committee intends that the revised definition of 'use in commerce' be interpreted to mean commercial use which is typical in a particular industry. Additionally, the definition should be interpreted with flexibility so as to encompass genuine, but less traditional, trademark uses[.]" Senate Judiciary Committee Report on S. 1883, S.Rep. No. 100-515, p. 44-45 (Sept. 15, 1988)(emphasis added).
 
 
 14
 Prior case law is instructive as to the minimum requirements set forth under the old "token use" requirement. Because the new requirement poses a higher hurdle for quantum and nature of use, we can assume that uses that did not qualify under the token use system will not qualify under the newer, more stringent system. The TTAB has specified that a use will not qualify under the token use system if it is comprised of "sporadic, casual or nominal shipments of goods bearing a mark." Bellanca Aircraft Corp. v. Bellanca Aircraft Eng'g., Inc., 190 USPQ 158, 167 (T.T.A.B.1976); see Mastic, Inc. v. Mastic Corp., 230 USPQ 699, 701 (T.T.A.B.1986). The Second Circuit has held that some 89 sales of trademarked perfume in a 20-year period did not constitute the type of bona fide use needed to afford trademark protection, and that limited sales of wine over a three-year period did not constitute the quantum of use to afford trademark protection. See La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1272, 181 USPQ 545, 548 (2d Cir.1974); Chandon Champagne Corp. v. San Marino Wine Corp., 335 F.2d 531, 534, 142 USPQ 239, 242 (2d Cir.1964). The use of a mark under the former code provision was required to "reflect a continual effort to create a viable business in the goods so marked." LaMaur, Inc. v. International Pharmaceutical Corp., 199 USPQ 612, 617 (T.T.A.B.1978). Although these cases are not binding, but only persuasive, authority, we generally accept these Board and regional circuit cases as accurately summarizing the law on "use in commerce."
 
 
 15
 Appellant contends that he has sold or given away "a couple of hundred" of the game sets in question since 1982. He sells the game sets at cost and gives them away if he is "in a good mood." Based on his testimony that he sold twenty to twenty-five games last year, Mr. White's gross income from the games could not be more than $12.50. This quantum of use is "sporadic, casual and nominal," and, moreover, White's use does not reflect a "continual effort to create a viable business in the goods so marked." Therefore, the use would not qualify under the old standard, much less qualify as a use in a volume "which is typical in [White's] particular industry." For these reasons, appellant's use of the game does not rise to the level of a "use in commerce" that would satisfy the requirements of trademark registration under the Act.
 
 
 16
 Because we conclude that the appellant's use of the mark THE ROMULANS in connection with his connect-the-dots game does not constitute a "use in commerce" as contemplated by the Act, the ruling of the TTAB that the mark does not meet the requirements for registration on the principal register is affirmed.
 
 
 
 [1]
 This is the second trademark litigation between these parties. In the first, Paramount opposed White's application to use the mark THE ROMULANS for his band. White prevailed and the mark was registered to him on the principal register for "entertainment services, namely, live and recorded performances by a vocal and instrumental group." See Paramount Pictures Corp. v. Romulan Invasions, 7 USPQ2d 1897 (T.T.A.B.1988)
 
 
 [2]
 After this decision, the proceedings were suspended pending Paramount's submission of a showing of standing. On August 10, 1995, the TTAB ruled that Paramount had standing in this proceeding